IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-29 (Erie) |
| | ) | |
| CLARENCE ROBERT NEAL | ) | |

## **MEMORANDUM IN AID OF SENTENCING**

Under federal sentencing law, a sentence of five years confinement, followed by a five year term of supervised release is warranted in this case.[1]

## **ARGUMENT**

Section 3553(a) provides that, in addition to the applicable guideline range and Sentencing Commission policy statements, district courts are required to consider the history and characteristics of the defendant, the nature and circumstances of the offense, the kinds of sentences available, the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to victims of the offense.  18 U.S.C. § 3553(a)(1), (3), (4),(5),(6), and (7). In addition, district courts must impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a)(2).

Consideration of the relevant § 3553(a) provisions compel a sentence of five years' imprisonment here.

---

[1] Mr. Neal notes that the requested sentence is a variance below the guideline range; however, the guidelines in this case, like the guidelines in the vast majority of child pornography offenses, offer no value in distinguishing cases and assisting courts in imposing sentence. As this Court is aware, the enhancements set forth in the guidelines apply in nearly all cases, and sentencing courts across the country routinely vary below the applicable ranges.

**A.      The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

Mr. Neal recognizes that victimization of children is a serious offense.  Nevertheless, this Court should also consider that Mr. Neal did not touch a child and his offense did not involve the distribution of child pornography. Indeed, this offense compared to other child pornography offenses is less serious because Mr. Neal obtained the images and saved them to Drop Box. Thus, he was not sharing the images, either actively or passively, through file sharing websites. As a result, consideration of the nature and circumstances of this offense warrant a sentence below the advisory guideline range.

Turning to Mr. Neal's history and characteristics, a sentence at the mandatory minimum is sufficient to meet the goals of sentencing. Mr. Neal is a 36 year old man with no prior convictions or arrests. During the execution of the search warrant, Mr. Neal voluntarily agreed to speak with law enforcement, in the privacy of their vehicle, and admitted to the offense conduct in this case.

While Mr. Neal has no criminal history, he has a work history, maintaining employment during pretrial releases despite losing his job following publicity for this case. Indeed, for a period of time, he worked two jobs. PSR at ¶¶ 64-65.

With this backdrop, Mr. Neal is less likely of offend, and the mandatory minimum sentence, which calls for five years of incarceration for this first time offender, and an additional five years of supervision, is sufficient to meet the goals of punishment and general deterrence, especially considering that Mr. Neal will also have to register as a sex offender.

Thus, a sentence of five years' incarceration, followed by five years' supervised release is sufficient to meet the goals of sentencing.

**B.      The Advisory Guideline Range**

The advisory guideline range in this case is 78-97 months. As set forth in Mr. Neal's Position with Respect to Sentencing Factors, the PSR erroneously added 4 points under U.S.S.G. § 2G2.2(b)(4)(B). While the Addendum corrected that error, it then erroneously added 4 points for images depicting sadomasochistic conduct or violence. Mr. Neal has no recollection of images that would constitute this enhancement and none have been described throughout the discovery process in this case. Thus, he knows of no factual basis for this enhancement and maintains his objection to paragraph 20 of the PSR.[2] The PSR describes three images, PSR ¶ 14, and none of them constitute the type of violence that justifies this additional enhancement.

Since its decision in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court has clarified the procedure sentencing courts must follow when embarking on the serious task of sentencing people. It has also clarified the role of the guidelines as advisory and noted that with

---

[2] Notably, this paragraph does not describe the facts that would justify this enhancement by actually describing an image that depicts adult penetration of a prepubescent minor. Instead, it gives a conclusory statement that "numerous videos depicted the sexual penetration of an infant or toddler." While the Addendum claims that this enhancement is based on the offense conduct provided by the government, it fails to set forth the facts upon which this enhancement is based. During the pendency of this case, Mr. Neal requested reports establishing any guideline enhancements, and the only relevant report produced to counsel failed to describe the facts underlying this enhancement. Specifically, an FBI report prepared in January 2019, failed to set forth the factual summary describing any such depiction and, instead, provided a conclusory statement apparently intended to trigger this enhancement. It reads, "SA Thoreson observed at least 10 videos that contained sadistic/masochistic sexual abuse of an infant or toddler. Each of these 10 videos contained a minor engaged in sexual acts with an adult male." As this Court is aware, the Guidelines here do not justify an enhancement under §2G2.2(b)(4)(B) merely for depictions of a minor -- even an infant or toddler -- "engaged in sexual acts with an adult male." Instead, the images, if not stereotypical images of s/m conduct, must portray adult penetration of a prepubescent child. *See United States v. Maurer*, 639 F.3d 72 (3d Cir. 2011) ("[W]e hold that in order to apply this enhancement, a sentencing court need only find, by a preponderance of the evidence, that an image depicts sexual activity involving a prepubescent minor and that the depicted activity would have caused pain to the minor."). Mr. Neal maintains his objection to this enhancement.

certain offenses, the Guidelines Manual may be less relevant than it would be for other offenses. *See Kimbrough v. United States*, 552 U.S. 85, 110 (2007).

The Third Circuit has recognized that the guideline section that applies to child pornography offenses like the instant case, "was not developed pursuant to the Commission's institutional role and based on empirical data and national experience*." United States v. Grober*, 624 F.3d 592, 608 (3d Cir. Oct. 26, 2010); *see also United States v. Dorvee*, 616 F.3d 174, 184(2d Cir. 2010); *United States v. Tutty*, 612 F.3d 128, 133 (2d Cir. 2010).

In this case, Mr. Neal should be sentenced to less than the advisory guideline range because, based upon the reasoning in *Kimbrough, Dorvee*, and *Grober*. The child pornography guidelines are not the result of careful review of empirical data and national experience, and they mandate application of a number of "enhancements" that apply in nearly every case. As a result, they provide virtually no distinction between a first-time offender and more culpable defendants.

As set forth below, the specific offense characteristics applicable in this case are applicable in nearly all child pornography cases; thus, they do nothing to distinguish this offense. The applicable, and "essentially inherent" enhancements that "apply in nearly every case" drastically increases the offense level for no meaningful reason. *See United States v. Grober*, 624 F.3d 592, 597 (3d Cir. 2010); *see also United States v. Dorvee*, 616 F.3d 174, 187 (3d Cir. 2010) ("[M]any of the § 2G2.2 enhancements apply in nearly all cases.").

**1)      The "use of a computer" enhancement is double counting and overstates seriousness of the offense.**

Several courts have acknowledged that the computer enhancement should not be applied. This enhancement applies in almost all § 2G2.2 cases.[3] "The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court." *United States v. Howard*, 2010 WL 749782, at *10 (D. Neb. 2010). Indeed, in Fiscal Year 2018, the use of a computer enhancement applied in a whopping 96.6% of cases under U.S.S.G. 2G2.2. *See* U.S. Sentencing Commission, Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2018 at 46. Thus, use of this enhancement is meaningless to distinguish this case from the vast majority of other cases.

This enhancement also has a "flavor of impermissible 'double counting'-because it effectively 'increase[s] a defendant's sentence to reflect the kind of harm that has already been fully accounted for' by the base offense level or other enhancements." *United States v. Tutty*, 612 F.3d 128, 132 (2d Cir. 2010). As such, the computer enhancement should be disregarded, especially here, where the images were not even stored on a computer.

**2)      The number of image enhancement lacks empirical support, is not justified by the commission's expertise, and overstates the offense seriousness**

The enhancements for use of a computer and number of images "are unsupported by empirical research, skew almost all child pornography receipt and possession cases upward and fail to provide meaningful separation of offenders," *United States v. Marshall*, 870 F. Supp. 2d 489, 493-94 (N.D. Ohio 2012).

Unlike quantity-based enhancements in a drug-distribution scheme, in child pornography cases, "the number of images does not provide the distinction between a large-scale and a small-

---

[3] In 2014, the use of a computer enhancement applied in 94.9% of cases under U.S.S.G. 2G2.2. *See* U.S. Sentencing Commission, Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2014 at 43.

scale child pornography purveyor that Congress and the Sentencing Commission must have envisioned when promulgating this market-based and quantity-driven scheme." *Howard*, 2010 WL 749782 at \*10. *See also United States v. Hanson*, 561 F. Supp. 2d 1004, 1009 (E.D. Wis. 2009) ("[G]iven the unfortunate ease of access to this type of material in the computer age, compiling a collection with hundreds of images is all too easy."). "Whatever connection there may be between a defendant's relative guilt and the number of images he possesses, an enhancement of up to five levels overstates that connection." *Howard*, 2010 WL 749782 at \*10. Thus, the "enhancements for use of a computer and number of images lack value as a reliable proxy for culpability and are a poor gauge of relative levels of fault between offenders." *Id.* In this case, Mr. Neal possessed approximately 152 videos. Given the large collections of child pornography often seen in this district and across the country, a five level enhancement in this case overstates the seriousness of the offense.

**3)      The enhancement for images of prepubescent children overstates the seriousness of the offense.**

Like the enhancement for use of a computer and number of images, the two level enhancement for depictions of children under the age of 12 is meaningless because it is present in virtually every case. In fiscal year 2018, for instance, the two level enhancement for images of a victim under the age of 12 applied in 94.1% of cases nationwide falling under U.S.S.G. § 2G2.2. *See* U.S. Sentencing Commission, Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2018 at 45. Because this enhancement applies so frequently, it fails to differentiate offenders in child pornography possession cases and, thus, fails to provide sentencing courts with meaningful specific offense characteristics.

**E.      The Need to Avoid Unwarranted Disparities**

This Court, when determining the sentence to impose, must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). So many courts across the country sentence outside the guideline range suggested by U.S.S.G. § 2G2.2 now that such sentences may be becoming more likely in § 2G2.2 cases than are guideline range sentences. *See United States v. McElheney*, 630 F.Supp.2d 886, 895 (E.D. Tenn. 2009).

Indeed, statistics published by the Sentencing Commission demonstrate this fact. In its Final Fiscal Year 2018 Quarterly Data Report ("Final 2018 Quarterly Report")[4], the Sentencing Commission reported that sentences outside of the guideline range are more common in child pornography offenses than any other type of offense. Final 2018 Quarterly Report at Table 10, p. 17. As set forth therein, in that reporting period, courts sentenced within the guidelines in merely 28.5% of cases.[5] *Id.* Variances below the guideline range were given in 62.7% of cases – more than in any other type of offense. *Id.*

Thus, consideration f this §3553(a) factor weighs in favor of a sentence below the guideline range.

**G.     Purposes of Sentencing**

A sentence below the advisory guideline range also comports with the purposes of sentencing, as set forth in § 3553(a)(2).  Indeed, consideration of the first enumerated purposes of sentencing -- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense and to afford adequate deterrence to criminal conduct -- weighs in

---

[4] This report is found at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC-2018_Quarterly_Report_Final.pdf

[5] Notably, these statistics include all child pornography offenses.

favor of imposing a sentence far below the advisory guidelines range. Possessing child pornography is a serious offense.  "Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake." *United States v. Stern*, 590 F.Supp.2d 945, 956-57 (N.D. Ohio Dec. 19, 2008) (emphasis in original, citations omitted).  A sentence that is too high promotes disrespect for the law just as a sentence that is too low. *Cf. id.* ("There is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than there is reason to believe that respect for the law will increase if a defendant who deserves a harsh sentence receives a slap on the wrist.") (citations omitted). *See also United States v. Ontiveros*, 07-CR-333, 2008 WL 2937539, at *3 (E.D.Wis. July 24, 2008) ("[A] sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect [for the law].").

Likewise, there is no indication that a sentence within that range would curtail more people from receiving child pornography.  As Judge Bennett stated in *United States v. Beiermann*, 599 F.Supp.2d 1087, 1103-04 (N.D. Iowa Feb. 24, 2009):

> [T]here is not a sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet.  From the rapid growth of these cases that my colleagues around the country and I are seeing, we cannot sentence Internet users and sharers of child pornography fast enough or long enough to make a dent in the availability of such material on the Internet .. [this] sentence should not be longer simply to satisfy an objective that, while laudable, is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of.

*See also United States v. Baird*, 580 F.Supp.2d 889, 895 (D. Neb. Jan. 11, 2008) (the "mere fact of ... prosecution [for child pornography possession] deters others from engaging in this sort of conduct, and a sentence of incarceration [of 24 months] will act as a further deterrent to others

contemplating such activity.  The value of any longer sentence as a deterrent, over and above these other factors, would be marginal.").

Consideration of the need to protect the public from future crimes of Mr. Neal weighs in favor of sentencing him far below the advisory guideline range. Indeed, Mr. Neal has zero criminal history points, making it is far less likely that he will recidivate.  According to the United States Sentencing Commission's May 2004 Report, "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines," at 12 and at http://www.ussc.gov/publicat/Recidivism_General.pdf "[r]ecidivism risk increases with each [Criminal History Category ("CHC")] . . . offenders in CHC I have a substantially lower risk of recidivating within two years (13.8%) than offenders in CHC VI (55.2%)."  Generally, the longer the criminal record, the more likely the offender recidivates. Mr. Neal is in criminal history category I, the category with the lowest recidivism rate.

Finally, with respect to recidivism, this Court should note that the fact that Mr. Neal will be required to register as a sex offender and will likely have conditions imposed upon him during supervision that will limit and/or monitor computer access and being around minors. All of these factors will further decrease the likelihood of recidivism; thus, a lengthy term of imprisonment is not necessary to achieve this goal of sentencing.

Consideration of the remaining purposes of sentencing -- to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner -- does not even weigh in favor of a term of imprisonment because these factors can be met without incarceration.

Because a sentence of five years' imprisonment sufficiently meets the goals of sentencing set forth in Section 3553(a)(2), consideration of this factor weighs in favor of a variance in this case.  Anything longer would be greater than necessary to meet these goals of sentencing.

Respectfully submitted,

s/ Linda E. J. Cohn
Linda E. J. Cohn,
Assistant Federal Public Defender