IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-29 Erie |
| | ) | |
| CLARENCE ROBERT NEAL IV | ) | |

### SENTENCING MEMORANDUM
### OF THE UNITED STATES

Neal seeks a sentence of 60 months, less than half the bottom of his 121 to 151 month guideline range. He is not entitled to such a drastic reduction in light of the extreme nature of his child pornography collection.

On June 6, 2016, the National Center for Missing and Exploited Children (NCMEC) received a complaint from Dropbox, Inc. via NCMEC's CyberTip system. Headquartered in San Francisco, California, Dropbox is a file storage, syncing and collaboration service that allows users to store, access and share their files on computers, phones, tablets, and the Dropbox website. The complaint from Dropbox to NCMEC stated that a user of Dropbox account "**Bo N**" with email address "**bocefus1983@yahoo.com**" uploaded several files to the account which Dropbox believed to be child pornography. In their complaint, Dropbox included 152 files that were uploaded to the Dropbox account "**Bo N**" with email address "**bocefus1983@yahoo.com**". Dropbox captured and included in their complaint four IP addresses of a user who logged into the "**Bo N**" Dropbox account between December 26, 2015 and March 10, 2016, as follows:

- December 26, 2015 at 04:50:09 UTC from IP address 98.21.72.71
- January 26, 2016 at 06:15:13 UTC from IP address 98.21.79.167
- February 6, 2016 at 05:32:26 UTC from IP address 98.21.95.92

- March 10, 2016 at 10:26:13 UTC from IP address 98.21.84.63

FBI Special Agent Jason Crouse reviewed approximately 30 of the 152 files that were uploaded to the "**Bo N**" Dropbox account and included in the complaint. A vast majority of the files reviewed by Special Agent Crouse contained suspected child pornography, with three further described as follows:

a) **0065. 10yo Daughter Suck Daddys Cock.flv** - A 1 minute and 31 second video depicting a naked pre-pubescent female performing fellatio on an adult male's penis. During the audible parts of the video, the adult male can be heard instructing the pre-pubescent female on how to perform fellatio.

b) **5b130ca6-556d-43a4-b30a-e51afe5c238c.mp4** - A 41 second video depicting a pre-pubescent female wearing a pajama top laying on a bed and exposing her vaginal area while it is being rubbed by a sex toy. During the video, the pre-pubescent female can be heard saying "stop" multiple times and the adult male responds "no" or "never" each time.

c) **bathtime with daddy- 3yo girl.mpg** -
A 3 minute and 15 second video depicting a naked pre-pubescent female standing in a bathtub. An adult male can be heard instructing her to rub her vaginal area. Later in the video, the girl performs fellatio on the adult male.

The FBI determined that the four account login IP addresses provided by Dropbox were assigned to and administered by Windstream Corporation. Two United States Department of Justice, Federal Bureau of Investigation Administrative Subpoenas were served on Windstream Corporation requesting subscriber information for the following IP addresses and corresponding dates and times: IP address 98.21.72.71 on December 26, 2015 at 04:50:09 UTC; IP address 98.21.79.167 on January 26, 2016 at 06:15:13 UTC; IP address 98.21.95.92 on February 6, 2016 at 05:32:26 UTC; and IP address 98.21.84.63 on March 10, 2016 at 10:26:13 UTC.

On July 26, 2016, Windstream Corporation responded to the subpoena requesting subscriber information for IP address 98.21.84.63. On August 9, 2016, Windstream Corporation

Case 1:16-cr-00029-DSC   Document 59   Filed 11/22/19   Page 3 of 11

responded to the subpoena requesting subscriber information for IP addresses 98.21.72.71, 98.21.79.167, and 98.21.95.92. Windstream Corporation provided information in both responses which indicated that the subscriber to all four IP addresses, during the dates and times of the "Bo N" Dropbox account log-ins, lived at a residence in Johnsonburg, Pennsylvania where Clarence Neal was residing.

On August 22, 2016, United States Magistrate Judge Susan Paradise Baxter issued a federal search warrant authorizing the search of the premises located at 407 1st Avenue, Johnsonburg, Pennsylvania. On August 23, 2016, FBI Special Agents along with other law enforcement personnel executed the search warrant at 407 1st Avenue, Johnsonburg, Pennsylvania. During the execution of the search warrant, Special Agent Crouse made contact with Clarence Neal IV who was present and living at the residence.

The FBI advised Neal that they wished to discuss with him the facts and circumstances surrounding the investigation. Neal was advised that he was not under arrest, was free to leave, and did not have to speak to the agents. Neal indicated he wished to speak with the agent. After offering to speak with Neal inside the residence, Neal indicated that he preferred to speak with the FBI inside an agent's vehicle. Once inside the vehicle, Neal was read, as he read along, a FD-395 Advice of Rights Warning and Waiver. Neal acknowledged he understood his rights and signed the FD-395.

During the interview, Neal admitted to setting up and being the sole user of Dropbox account using email address **bocefus1983@yahoo.com**. Neal further disclosed that he would obtain child pornography on-line and save the file directly to his Dropbox account using email address **bocefus1983@yahoo.com**. From there, Neal would log into his Dropbox account on-line, via his web-browser, and view the child pornography. Neal also disclosed that he preferred child

3

pornography featuring boys 16-17 years of age, and admitted to masturbating to the child pornography he had saved in his Dropbox account. Also during the interview, Neal explained that he did not delete the child pornography he collected in his Dropbox account. Neal further stated that he did not provide his Dropbox password to anyone.

A subsequent review of the contents of Neal's Dropbox account revealed 152 separate videos depicting minors engaged in sexually explicit conduct. Numerous videos depicted the sexual penetration of an infant or toddler. In several of these videos the minor can be observed in obvious pain. One video depicted an adult male urinating into the mouth of a minor.

## Argument

### A. Legal Context

Numerous courts have emphatically expressed the wretched consequences of child pornography. In *United States v. Goff*, 501 F.3d 250, 258-59 (3d Cir. 2007), the Third Circuit noted:

> Children are exploited, molested, and raped for the prurient pleasure of Goff and others who support suppliers of child pornography. These small victims may rank as "no one else" in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing "casual" or theoretical about the scars they will bear from being abused for Goff's advantage.

The defendant in *United States v. MacEwan*, 445 F.3d 237, 249-50 (3rd Cir. 2006), tried to downplay his receipt of child pornography by claiming that he was not a violent offender or a trafficker of guns or drugs. The Third Circuit was not persuaded, reasoning:

> Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child

> pornography, because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Furthermore, "it inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials."

*Id*. (citations omitted); *See United States v. Gonzalez*, 445 F.3d 815 (5th Cir. 2006); *United States v. Duhon*, 440 F.3d 711, 718-20 (5th Cir. 2006); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

The district court in *United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012), imposed a guideline sentence on a child pornography defendant. In denying the defendant's challenge to the legitimacy of the child pornography guideline, the court reasoned:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.
>
> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.

### B. Sentencing Protocol

It is well settled that district courts "must perform three steps in determining the appropriate sentence to impose on a defendant." *United States v. Wise*, 515 F.3d 207, 216 (3d Cir. 2008). First, "a district court must begin the process by correctly calculating the applicable Guidelines range." *Id. (*citing *United States v. Gall*, 128 S.Ct. 586, 596 (2007); *United States v.*

*Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)).  Second, the court must "formally rule on the motions of both parties and state on the record whether [it is] granting a departure and how that departure affects the Guidelines calculation and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force."  *Id. (*citing *Gunter*, 462 F.3d at 237).  Third, "after giving both sides the chance to argue for the sentences they deem appropriate, the court must exercise its discretion by considering all of the § 3553(a) factors and determining the appropriate sentence to impose."  *Wise*, 515 F.3d at 216-17 (citations omitted). Having set forth the well-established sentencing protocol, the United States will take each step in turn.

### C.  Applicable Guideline Range

Neal erroneously claims that his guideline range is 78 to 97 months.  United States Probation has correctly calculated Neal's guideline range as 121 to 151 months because the extreme videos Neal possessed which depicted infants and toddlers being raped and a video of an adult male urinating in the mouth of a minor, qualify for the sadistic/extreme violence enhancement even under the 2015 version of U.S.S.G. § 2G2.2(b)(4).  *See United States v. Maurer*, 639 F.3d 72 (3d Cir. 2011); *United States v. Groenendal,* 557 F.3d 419 (6th Cir. 2009) (applied the 4-level enhancement because one image portrayed penetration of a young girl by an adult male); *United States v. Burns,* 834 F.3d 887 (8th Cir. 2016) (vaginal sex acts with a minor constituted sadistic conduct); *United States v. Koch,* 625 F.3d (8th Cir. 2010)*.*  Thus, even though the 2018 version of the guidelines differs from the 2015 version, Neal's guideline range is the same under either version.

### D. Departures

The United States is not seeking an upward departure. A sentence within the 121 to 151 month guideline is justified, reasonable, and appropriate in this case.  Neal does not seek a

6

downward departure based on any specific provision of the Sentencing Guidelines. Rather, Neal is seeking an enormous downward variance of sixty-one months to the mandatory minimum sentence of sixty months.

Neal takes issue with the imposition of two offense levels for his use of a computer to commit the crimes.  It is well established that the use of a computer enhancement does not constitute impermissible double counting. *United States v. Ziska*, 602 F. App'x 284, 289 (10th Cir. 2015).  Neal seeks a downward variance because everyone uses a computer now to commit child pornography offenses.  There is significant irony to Neal's claim.  The penalty was enacted to curb the explosion of child pornography on the Internet. The fact that Internet pornography is so pernicious is not a basis to reduce penalties.  Indeed, there is no other area of criminal law where, when severe crime becomes more common, the penalties are reduced.  This argument also ignores the purpose of the enhancement. Due to the wide dissemination and instantaneous transmission, computer-assisted trafficking of child pornography is extremely difficult for law enforcement officials to stop. *United States v. Lebovitz*, 401 F.3d 1263, 1271 (11th Cir. 2005) (quoting H.R.Rep. No. 104-90, at 3-4 (1995), as reprinted in 1995 U.S.C.C.A.N. 759, 760-61). Thus, the enhancement for use of a computer aims at punishing *a distinct harm* beyond the mere possession of child pornography. *United States v. Tenuto*, 593 F.3d 695, 698-99 (7th Cir. 2010).

Neal also takes issue with the number of images enhancement claiming that it does not reflect current technology and the ease by which an offender can accumulate material.  This objection hardly applies to Neal who had 152 videos which he downloaded to his Drop Box account.

### E. **Section 3553 Factors**

When sentencing a defendant, the Court's reasoning must be guided by all of the sentencing considerations set forth in 18 U.S.C. § 3553(a), not just those related to a defendant's background. *Wise*, 515 F.3d at 216-17; *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). In pertinent part, these factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; ...
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for -
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines- ...
(5) any pertinent policy statement-
(A) issued by the Sentencing Commission ...
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to victims of the offense.

18 U.S.C. § 3553(a); *Id.*

Notably, these factors do not involve merely a focus upon the defendant's background and the impact of the sentence on the defendant. Rather, a correct application of these factors to any case involves a balancing of all of the factors, which include the guidelines, the defendant's criminal conduct and its impact upon the victims and not just a consideration of the defendant's background and history. A solitary focus on only the defendant is certainly not an appropriate manner in which to apply the § 3553 factors to this case. A full consideration of the § 3553 factors calls for a sentence within the 121 to 151 month guideline range.

### 1. Nature and Circumstances of the Offense

Neal's collection included extreme material depicting the rape of infants and toddlers. He also possessed a movie depicting an adult male urinating into the mouth of a minor. He maintained his collection in a Drop Box account demonstrating at least some effort to hide his collection. In short, there is nothing remotely mitigating about Neal's conduct.

### 2. History and Characteristics of the Defendant

Neal had a normal upbringing free of abuse. He graduated from high school and attended a few years of community college. He has some work history and was employed when the presentence report was completed. While he does suffer from epilepsy, his last seizure was several years ago so his condition appears well managed. Neal does not have significant mental health issues and has not had an issue with alcohol for at least a dozen years. There is simply nothing mitigating about Neal's background.

### 3. The Need for Sentence Imposed to Reflect the Seriousness of Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense.(quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* The Supreme Court has long recognized that sexual abuse has devastating and long lasting effects on children. *New York v. Ferber*, 458 U.S. 747, 758 n.9 (1982). Indeed, four members of the Supreme Court deemed child rape to be so serious that death could be imposed as a punishment. *Kennedy v. Louisiana*, 554 U.S. 407, 447-70 (2008).

Neal received, transported and possessed child rape movies. Surely a sentence sixty-one months below the bottom of his guideline range does not adequately reflect the gravity of such conduct.

### 5. The Need for the Sentence Imposed to Afford Adequate Deterrence

#### a. General Deterrence is an Important Factor in Sentencing

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *Irey*, 612 F.3d at 1206, (citing *Ferber*, 458 U.S. at 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.")).

In fact, the Sixth Circuit has reversed a district court that failed to see any importance in general deterrence. *See United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012). The district court stated "general deterrence ... will have little [if] anything to do with this particular case."

*Id.* The Sixth Circuit found the district court's statement "inexplicable and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]" *Id.* (citing *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)).

The Court is in a position to send a clear message to the community that those who collect child pornography will pay a very heavy price. The goal of deterrence is realized if even one child pornography collector is deterred. A sentence within the applicable guideline range will accomplish this goal. A mandatory minimum sentence sixty-one months below the bottom of the guideline range most definitely will not.

### b. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant

This is the factor involving the incapacitation or specific deterrence of the defendant that the Court is to consider. *See Irey*, 612 F.3d at 1210. Neal is clearly keenly interested in sexual activity with young children. As a result, the Court should impose a significant guideline range jail sentence and a considerable term of supervised release in order to ensure that the danger to the community posed by Neal is minimized as much as possible.

Based upon all of the facts and circumstances in this case, the Court should impose a sentence well within the guideline range of 121 to 151 months.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

s/Christian A. Trabold
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013